UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

OMAR A. TAYLOR,

        Plaintiff,

  -against-

FAMILY RESIDENCES AND ESSENTIAL
ENTERPRISES, INC.,

        Defendant.

----------------------------------X

Civil Action No: 03-6122
(DRH)

**MEMORANDUM &ORDER**

**APPEARANCES:**

**OMAR A. TAYLOR**
Plaintiff Pro Se
32 S. Bedford Avenue
Islandia, NY 11749

**JACKSON LEWIS LLP**
Attorneys for Defendant
58 South Service Road, Suite 410
Melville, New York 11747
By: Kathryn J. Russo, Esq.
    Mark S. Mancher. Esq.

**HURLEY, Senior District Judge:**

      By Memorandum & Order dated March 31, 2006, the Court granted plaintiff's motion to amend his complaint to add a race discrimination claim pursuant to 42 U.S.C.§ 1981 claim but denied the motion to the extent he sought to add claims for §§ 1982 to 1988 and the "New York State and Federal Wage Hours Laws." Thereafter, Plaintiff filed an amended complaint which exceeds the scope of amendment permitted by the aforementioned Memorandum & Order.

Presently before the Court is Plaintiff's motion to amend his complaint and Defendants' motion to strike the amended complaint to the extent it does not comply with the Court's March 31, 2006 Order. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part and Defendants' motion is granted in part and denied in part.

*Background*

The following facts are taken from this Court's Memorandum and Order dated March 31, 2006. Plaintiff was an employee of Defendant beginning on August 6, 2001. He was a Direct Care Counselor. Defendant is a not-for-profit agency that offers a wide variety of services for persons with mental illnesses and developmental disabilities.. Plaintiff alleges that "[t]hroughout my employment, I was subjected to a severe and racially hostile environment on a continuous basis. I was denied equal terms and conditions as my white counterparts because of my gender and race." Plaintiff further alleges that during his tenure with Defendant, he "was paid a lower salary than my white co-workers and discriminated against by management because of my gender and race."

The conflict apparently began in the period before January 2002, when Plaintiff "was falsely accused by Defendant for allegedly making 'inappropriate sexual remarks' to several white female[s]." As a result of these accusations, Plaintiff's employment was terminated. He was reinstated a month later, however, "[a]s a result of me disputing my termination." According to Plaintiff, "Defendant rehired me because the Defendant realized that my termination was unlawful." Plaintiff alleges that his termination, the terms of his re-hiring, and the suggestion that he had made "inappropriate sexual remarks" were racially-motivated. Plaintiff alleges that after he was rehired, "I was routinely suspended when I complained about

unpaid wages due to me and missing vacation and sick time."

After his rehiring, Plaintiff alleges that a current of gender discrimination emerged as well. Plaintiff claims that he took a weekend shift, but was not paid at a rate equivalent to his female predecessor on that shift. His predecessor, Jessica Kelly, "had the same job duties, responsibilities, hours, work location and job title," yet she was paid $4.21 more per hour. Defendant allegedly explained to Plaintiff that they were "waiting for [his] paperwork to be approved." Plaintiff claims that "Defendant knew they were not going to approve me to work the weekend shift . . . yet they led me on to keep me working that shift at a reduced rate of pay . . . ." Defendant then allegedly "officially denied" Plaintiff the opportunity of working that weekend shift because "they claim to discourage male counselors from working at the . . . facility." (*See* Ex. M ("In addition to this guideline, Family Residences discourages male direct care counselors from working alone when there are females residing in the program.").) This is the primary example of gender discrimination provided by Plaintiff.

As a result of these allegedly discriminatory acts, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights on January 15, 2003. Thereafter, Plaintiff filed his original pro se complaint on December 4, 2003. Defendant answered on February 24, 2004. On March 9, 2005, Plaintiff made his first motion to amend his complaint seeking to add claims of "race discrimination pursuant to section 1981 through 1988 of Title 42 of the United States Code" and "disparate treatment under New York State and Federal Wage and Hours Laws"  Defendant opposed the motion. By Order dated March 31, 2006, the Court granted the motion to add his § 1981 claim but denied the motion as to the §§ 1982 to 1988 claims and the unspecified  "New York State and Federal Wage and Hours Laws."

Plaintiff now moves to amend his complaint so that it asserts claims for gender discrimination, disparate treatment, retaliation, violations of the Equal Pay Act and race discrimination. (*See* Plaintiff's Motion to Amend Complaint, Docket No. 68-1 at p. 22.) According to Plaintiff's motion, these are the only claims he intends to pursue. (*Id.* at p. 7.) Defendant oppose the motion on the grounds the proposed amendments do not comply with this Court's March 31, 2006 Order and because they are futile.

## DISCUSSION

Rule 15(a), provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "[A] pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (citation and quotations marks omitted).

A motion to amend should be denied, however, "if there is an 'apparent or declared reason -- such as [1] undue delay, [2] bad faith or dilatory motive . . . , [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of the allowance of the amendment, [or (5)] futility of amendment.'" *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the decision of whether to allow a party to amend his complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979). Here, there is no contention of undue delay, bad faith, repeated failures to cure deficiencies or undue prejudice. Accordingly, the Court shall limit its discussion to futility.

4

Rule 8 pleading is extremely permissive. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). As the Supreme Court noted in *Swierkiewicz*, Rule 8(a)(2) provides (a) that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief," and (b) that such a statement simply "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id*. at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004). The Court therefore held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" so long as the complaint provides the defendant "fair notice of the basis for [the] claims." *Id.* at 514-15.

## *The New Allegations*

Plaintiff's seeks leave to amend his complaint to assert the following allegations which he asserts support his Title VII, Equal Pay Act and Section 1981 claims:

1) his supervisor's preference to place females in overnight shifts;

2) a conspiracy by co-workers to have him fired which was initially successful; when, after an investigation, Plaintiff was exonerated the females received no disciplinary action while he lost salary due to his wrongful termination;

3) after complaining about the wages he lost while terminated, he was ordered at 4:00 am to leave his work site and go to another of Defendant's sites, Pineway, where he was told "to watch your back because there were threatening phone calls being made to a black guy who works in this house." His supervisor then assigned him to Pineway knowing that the hours there, midnight to 8:00 a.m., interfered with his ability to be at his day job at 8:15 a.m.

4) Plaintiff was suspended without pay and tricked into accepting a demotion to relief worker.

5

4) Although he received a great evaluation, he learned that a white female co-worker, who was soon leaving, was earning $4.21 more an hour than him simply because she was classified as a weekend only employee. When the co-employee left, he requested her weekend only position. He filled out the necessary paperwork and began working the weekend only shift, but never received the raise.

5) After he inquired about his pay increase, all of his vacation accruals vanished allegedly in retaliation for his complaints about not receiving the pay raise.

6) In retaliation for his pay complaints, his supervisor failed to schedule him for CPR training, resulting in his suspension.

7) After working the weekend shift at the lower pay rate, he was told that he was denied the position because he "was a man. Male counselors could not permanently work in a residence where female clients reside."

### *Title VII*

It appears that Plaintiff has included the above allegations in his proposed amended complaint, at least in part, as further details supporting his Title VII gender discrimination claims. To that extent, the amendment will be allowed except as noted below.

Defendant opposes the proposed VII amendment regarding Plaintiff's supervisor's preference for female employees for shift work on several grounds. Defendant's contention that this claim fails because Plaintiff does not set forth any adverse employment action is rejected. A fair reading of Plaintiff's allegations is that he was denied overnight shift work because of his gender. Defendant's also argue that the claim is time barred. As discussed below, only to the extent that Plaintiff seeks to recover based on the alleged preference for the period prior to

6

March 2002, is the Title VII claim time-barred.

Under Title VII, before filing a complaint in federal court, the claimant must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC and receiving a "right to sue" letter. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999). In New York, a claimant must file the charge within 300 days of the alleged unlawful act. *See id.* at 327-28; *see also Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, 2003 WL 22019073, at *3 (E.D.N.Y. Aug. 26, 2003) (citing 42 U.S.C. § 2000e-5(e)(1)). The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

The 300-day limitation period generally begins to run when the plaintiff knows or should know of the occurrence of the alleged discriminatory act. *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). That is, the time bar is based on when discriminatory acts happen, not when their effects are felt. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). The Supreme Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. By contrast, where a plaintiff claims to have suffered from a discriminatory hostile environment, "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 103.

Plaintiff filed his Equal Employment Opportunity Commission charge on January 15,

7

2003. Therefore, in order to be timely, all of the discrete discriminatory acts alleged must have occurred on or after March 21, 2002 (300 days prior to January 15, 2003). To the extent the allegations as to the preference for females relates to the period prior to March 2002, they are untimely. However, a fair reading of Plaintiff's pro se complaint reveals that he is alleging that this preference continued to affect him in 2002. The amendment shall therefore be granted regarding the alleged preference for females for the period after March 2002.

### *The Equal Pay Act Claims*

The Equal Pay Act (" EPA") prohibit employers from paying higher wages to employees of the opposite sex for "equal work on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions" when the pay differential is due to gender. *Belfi v. Pendergast*, 191 F.3d 129, 136 (2d Cir. 2999) (citing 29 U.S.C. § 206(d)(1)). "To establish a prima facie violation of the EPA, a plaintiff must demonstrate that I) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Ryduchowski v. Port Authority of New York & New Jersey,* 203 F.3d 135, 142 (2d Cir. 2000)(internal quotations and citations omitted.). "However, unlike Title VII, the EPA does not require a plaintiff to establish an employer's discriminatory intent." *Id.*

Clearly, the vast majority of the above referenced allegations do not state a claim for violation of the Equal Pay Act. The only allegation that warrants discussion is the allegation that Plaintiff's predecessor, Jessica Kelly, 'had the same job duties, responsibilities, hours, work location and job title but was paid $4.21 per hour more than plaintiff." Facially, the allegations

meet the requirements for an EPA claim. Plaintiff has set forth that the employer paid him less than a female worker for the same job performed on the same shift. Defendant's contention that Ms Kelly, in fact, occupied a different position does not render the amendment futile. At this stage the relevant inquiry is whether a claim has been stated and not whether the proof will support the claim. Accordingly, the amendment to add an EPA claim will be allowed to the extent of the claim regarding plaintiff's pay vis a vis Ms. Kelly.

The Court is cognizant of the fact, as pointed out by the Defendant, that this Equal Pay Act claim goes beyond the amendment permitted by this Court's prior Order. However, given the Plaintiff's pro se status, this Court is required to afford him to a more liberal standard than that applied to parties represented by counsel. *Cf. McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999).

### *The Section 1981 Claims*

Defendant has moved to strike the Plaintiff's allegations to the extent they are asserted as support for Plaintiff's 1981 claim on the grounds that they do not allege race discrimination and do not comply with this Court's prior Order. As noted above, a more liberal standard is applied to pro se plaintiffs. Also, this is only the second amendment sought by Plaintiff. Accordingly, to the extent the motion to strike is premised on the scope of this Court's prior Order, it is denied.

The Court now turns its attention to whether the allegations at issue support a § 1981 claim. It is possible to read Plaintiff's allegation that he, a black male, was paid less than a white female co-worker, as alleging not only gender discrimination under Title VII but race discrimination under § 1981 as well. Moreover, Plaintiff goes on to allege certain acts which he claims were in retaliation for his complaints about his racially discriminatory pay. Viewed in this

9

light, these allegations support Plaintiff's § 1981 claims. The motion to strike these allegations as not supporting a § 1981 claim is therefore denied.

The Court agrees, however, with Defendant's argument that the remaining allegation, including Plaintiff not being paid for the period he was terminated, his being denied weekend shifts because he was a male and his being tricked into a demotion, cannot even liberally, be read as alleging race discrimination. The motion to strike is therefore granted to the remaining allegations to the extent they are claimed violations of § 1981.

### *Conclusion*

For the reasons set forth above, Plaintiff's motion to amend his complaint is granted 1) as to Title VII except for the allegations of a preference for females prior to March 2002; 2) as to the Equal Pay Act only with respect to the allegations regarding Plaintiff's pay vis a vis Ms. Kelly and 3) as to § 1981 granted as to the allegations regarding Plaintiff being paid less than a white co-worker and being retaliated against when he complained about his racially discriminatory pay. In all other respects, the motion to amend is denied. Defendant's motion to strike is denied as to the claims for which leave to amend is herein granted and otherwise granted. Given Plaintiff's pro se status, the Complaint shall be deemed to be amended as permitted above and Defendant shall be deemed to deny the new allegations.

**SO ORDERED**

Dated: Central Islip, New York
January 31, 2007

/s/_____
Denis R. Hurley
Senior District Court Judge